IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| MARSHALL CONSTRUCTION COMPANY, INC., | ) ) | Case No. 4:05-CV-00012 |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION** |
| v. | ) ) | |
| GLADE EAST, LLC, FIREMAN'S FUND INSURANCE COMPANY, | ) ) ) | By: Jackson L. Kiser<br>Senior United States District Judge |
| Defendants. | ) ) ) | |

Before this Court is the Plaintiff's *Motion for Summary Judgment*. A hearing on the Plaintiff's *Motion* was held on March 10, 2006 and the *Motion* is now ripe for judgment. For the reasons stated below, the Plaintiff's *Motion* shall be **denied.**

## I. PROCEDURAL BACKGROUND

The Defendants removed this case from the Circuit Court for the City of Danville to this Court on February 24, 2005. The Plaintiff filed a *Motion for Summary Judgment* on February 23, 2006, and the Defendant filed a *Response* on March 9, 2006. A hearing on the Plaintiff's *Motion* was held before this Court on March 10, 2006.

## II. STATEMENT OF FACTS

Glade East ("Defendant") hired Marshall Construction ("Plaintiff") as a subcontractor for purposes of building a bridge in Danville, Virginia. The Virginia Department of Transportation ("VDOT") invited bids for the project, the Defendant submitted a bid of $13,946,890.21, and as the lowest responsive and responsible bidder, was awarded the contract with VDOT. The Defendant entered into a contract with VDOT on April 2, 2001, in which the Defendant agreed

-1-

to act as the general contractor responsible for completing the project by November 1, 2003. Pursuant to the terms of the Prime Contract, as required by the *Virginia Public Procurement Act*, the Defendant furnished VDOT with a labor and material payment bond issued by Fireman's Fund Insurance Company.

In submitting its bid to VDOT, the Defendant specifically agreed that it would be bound by the specifications of the ultimate Prime Contract between VDOT and the Defendant. Section 107.01 of the specifications of the Prime Contract required the Defendant to "observe and comply with [all] laws . . . that affect[] those engaged or employed on the work, the conduct of the work, or the execution of any documents in connection with the work." The Prime Contract contained the following express provisions, in pertinent part, pertaining to the obligations of the Defendant to make prompt payment to its subcontractors:

> *Section 107.01*:
> In accordance with Article 2.1 of Chapter 7 of Title 11 of the Code of Virginia (Virginia Public Procurement Act), the Contractor shall make payment to all subcontractors, as defined in the Code, within seven days . . .
>
> These same requirements shall be included in each subcontract and shall be applicable to each lower-tier subcontractor. *Prime Contract, Page 22*
>
> *Section 109 Payment*:
> Upon Department payment of the subcontractor's portion of the work as shown on the monthly progress estimate and the receipt of payment by the Contractor for such work, the Contractor shall make compensation in full to the subcontractor . . .
>
> The Contractor shall make payment in full for the portion of the work identified on the monthly progress estimate to the subcontractor within 7 days of the receipt of payment from the Department . . . *Prime Contract, Page 26*
>
> Each of these provisions were required to be included in the Prime Contract pursuant to

-2-

Case 4:05-cv-00012-JLK-BWC   Document 94   Filed 03/30/06   Page 2 of 11   Pageid#: 925

the *Virginia Public Procurement Act* (Va. Code Ann. §11-62.11)[1]  The Defendant entered into a Subcontract Agreement with the Plaintiff on April 18, 2001 under which the Plaintiff agreed to perform a portion of the Prime Contract on behalf of the Defendant.  Although Section I of the Subcontract incorporated "all terms and conditions of the Prime Contract," the prompt payment requirements required to be included in the Subcontract by Section 107.01 of the Prime Contract, were not expressly incorporated.  In fact, the Subcontract contained a provision which required the Defendant to pay the Plaintiff for its work "within fifteen (15) days of receipt of payment by [the Defendant] from [VDOT]." At the time of execution of the Subcontract, the Plaintiff was unaware that the Defendant was required pursuant to the Prime Contract and state law to incorporate the seven-day prompt payment provisions into the Subcontract.  The Plaintiff was also unaware that the Defendant was required to fully pay the Plaintiff its proportionate share of the payments that the Defendant received from VDOT within seven days of the Defendant's receipt of such payments, instead of the fifteen days provided in the Subcontract.

The Plaintiff performed work on the project from 2001 through 2005.  VDOT was responsible for estimating the approximate quantities and value of work performed on the project during each 30-day work period.  VDOT was then responsible for issuing the corresponding payment to the Defendant who was in turn responsible for paying each of its subcontractors for their proportionate share of all such payments. The Plaintiff received payments from the Defendant for each of the first twenty-nine estimates for the project; these payments covered work completed from the beginning of the project through the period ending on September 10,

---

[1] As of the date of the execution of the Prime Contract in this case, the *Virginia Public Procurement Act* was found at §11-35 – §11-80 of the *Code of Virginia*.  The Act was repealed and re-codified as §2.2-4300 – §2.2-4377 of the *Code of Virginia*, effective October 1, 2001.

2003. Although the Defendant made those payments and they were accepted by the Plaintiff, the Plaintiff discovered during this litigation that the majority of those payments were not made within the seven day time period set out in the Prime Contract or even within the fifteen-day time period set out in the Subcontract.

In December 2003, the Defendant began withholding payments from the Plaintiff because the Defendant alleges that the Plaintiff breached the Subcontract. The Defendants have withheld nine payments totaling $545,529.06.

### III.  STATEMENT OF LAW

Summary judgment is appropriate where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.  DISCUSSION

The Plaintiff contends that there is no triable issue as to whether Glade East was the first party to materially breach the Subcontract in this case. The Plaintiff claims that it cannot be held

liable for a later alleged breach of the Subcontract because the Defendant was the first to breach the Subcontract. Based on its contention, the Plaintiff argues that it is due the compensation it claims in its *Complaint*. In its *Memorandum in Support of its Motion for Summary Judgment*, the Plaintiff adamantly denies that it ever breached the Subcontract. However, the Plaintiff concedes for the purposes of its *Motion* that when the evidence is viewed in the light most favorably to the Defendant, the Defendant could establish a jury question on the issue of whether the Plaintiff breached the contract as early as July 2003. The Plaintiff admits both that it was paid by the Defendant for work completed through September 10, 2003, and that the Defendant did not begin withholding payments until December 2003.

### A. Plaintiff's Argument – Count I

The Plaintiff's Count I, for which the Plaintiff seeks summary judgment, is being brought under the Prime Contract on the theory that it is a third-party beneficiary of certain provisions of the Prime Contract. The Plaintiff alleges that as a third-party beneficiary, it was entitled to prompt payment pursuant to both the provisions of the *Virginia Public Procurement Act* and the language of the Prime Contract as incorporated into the Sub-Contract. The Plaintiff claims that the Defendant materially breached provisions of the Prime Contract, of which the Plaintiff is a third-party beneficiary, by failing to incorporate the prompt payment requirements into the Subcontract as required by the Prime Contract and state law. The Plaintiff also claims that the Defendant materially breached the Prime Contract by both failing to pay the Plaintiff within seven days of receiving payment from VDOT and failing to notify the Plaintiff in writing within seven days that the payment would be late.

The Plaintiff claims that the first alleged breach, failure to incorporate the prompt

-5-

payment requirement into the Subcontract, occurred at the moment the Subcontract was executed, or April 18, 2001. The Plaintiff points out that this date is well before the time that the Defendant claims that the Plaintiff breached the Subcontract. The Plaintiff claims that the second alleged breach, failure to timely compensate the Plaintiff, began from the inception of the project in 2001. That is, only six of the original twenty-nine payments made to the Plaintiff were made within the seven day period set out in the Prime Contract, and no written notification was ever given to the Plaintiff that such payments would be late.

### B. Plaintiff's Argument – Count II

The Plaintiff's Count II, for which the Plaintiff seeks summary judgment, is being brought under the Subcontract. The Plaintiff argues that the Defendant breached the Subcontract by failing to pay the Plaintiff its proportionate share of the payments that the Defendant received from VDOT.

The Plaintiff claims that the fifteen-day time period that was embodied in the Subcontract is unenforceable. The Plaintiff contends that the incorporation clause set out in the Subcontract, and the public policies underlying the *Virginia Public Procurement Act* mandate a finding that the (seven-day) prompt payment provision set out in the Prime Contract flowed into the Subcontract and bound the Defendant. The Plaintiff continues that even if the fifteen-day time period were enforceable, the Defendant only made fourteen out of the original twenty-nine payments within that amount of time.

Finally, the Plaintiff argues that the alleged breaches of the Prime Contract and Subcontract by the Defendant were material and occurred prior to the time period that the Defendant can rationally claim that the Plaintiff was in material breach of the Subcontract. The

Plaintiff therefore contends that the Defendant cannot enforce the Subcontract against the Plaintiff because it is well established that the party who commits the first material breach of a contract is not entitled to enforce the contract, and the other party is excused from performing its contractual obligations.

In it its *Memo in Support of its Motion*, the Plaintiff concludes:

> When viewed in the light most favorable to Glade East, the evidence establishes that there is no genuine issue that Glade East materially breached both the Subcontract and the prompt payment provisions of the Prime Contract under which Marshall is an intended third party beneficiary prior to the time period that Glade East claims, or reasonably could claim, Marshall breached the Subcontract. As the record in this case could not lead a rational trier of fact to find for the defendants, summary judgment is appropriate and Marshall is entitled to judgment as a matter of law as to each of the claims asserted in this case. Marshall requests that final judgment be entered in its favor against Glade East in the amount of $640,944.53, plus interest at the rate of 1% per month on each unpaid estimate commencing November 3, 2003 and continuing until all sums are paid in full, and that the claims asserted against Marshall herein be dismissed with prejudice.

### C.     Holding

The law in this case does not logically follow the Plaintiff's legal theory. The Plaintiff alleges that the Defendant materially breached the contract by failing to include a seven-day-pay period as prescribed by Virginia law, and by not paying the Plaintiff within the seven day period prescribed by Virginia law, or within the fifteen day period as set out in the Subcontract. I disagree with the Plaintiff's position that summary judgment should be entered in its favor on the issue of whether the Defendant was the first to materially breach the Subcontract.

In the Virginia Circuit Court case of *Shen Valley Masony, Inc. v. S.P. Cahill & Associates, Inc.* a contractor was ultimately found to have materially breached a contract by failing to pay the subcontractor within the Virginia statutory seven day period – the same statutory period cited by the Plaintiff in this case. 57 Va. Cir. 189, 198 (City of Charlottesville

-7-

Case 4:05-cv-00012-JLK-BWC   Document 94   Filed 03/30/06   Page 7 of 11   Pageid#: 930

2001). While cases from Virginia Circuit Courts are neither binding on nor especially persuasive to this Court, *Shen Valley* was cited by both parties in this case and *Shen Valley* does provide legal grounds for denying the Plaintiff's *Motion*.

The Plaintiff cites and relies greatly upon *Shen Valley* for the principle that "[F]ailure of a . . . contractor to make progress payments as due to [a] subcontractor[] is a material breach of the contract." *Shen Valley,* 57 Va. Cir. at 198. (quoting *In re Vecco Construction Industries, Inc.*, 30 B.R. 945, 948-49 (Bankr. E.D.Va. 1983)). However, the Plaintiff fails to cite the very next sentence from *Shen Valley*: "[C]onduct by one party which leads another to reasonably believe that 'performance on time will not be insisted on will operate as a waiver of the time condition, as to subsequent defaults as well as antecedent ones.'" *Id*. (quoting Corbin, *Corbin on Contracts* §754 (1 Vol. ed. 1952). The Court continued:

> Contractor argues that this rule operates to excuse its late payments. To the contrary, the evidence as a whole demonstrated that Subcontractor objected to the late payments and Contractor was apologetic for their lateness, thereby evincing that Subcontractor did not waive its right to demand timely payment. *Id*.

In this case, the Plaintiff never objected to the late payments made by the Defendant but instead deposited all of them, however late they were made. Not only did the Plaintiff not object to the late payments, the Plaintiff did not even know that such payments were late until discovery was conducted once litigation commenced in this case. For purposes of the Plaintiff's *Motion,* I must view the facts of this case in the light most favorable to the non-moving party – the Defendant. The conduct of the Plaintiff in this case, accepting the payments from the Defendant without objection, may have led the Defendant "to reasonably believe that performance on time" would not be insisted on, and the Plaintiff's conduct may have operated "as a waiver of the time condition, as to subsequent defaults as well as antecedent ones." *See,*

-8-

*Shen Valley*, 57 Va. Cir. at 198. The precedent from *Shen Valley* seems to say, contrary to the Plaintiff's argument, that the Defendant did not materially breach the contract by making late payments because the potential breach was waived by the Plaintiff. However, I am not making such a finding here but am only holding that the Plaintiff's argument must fail that this issue should be decided in its favor by way of summary judgment.

The Plaintiff also cites *Shen Valley* for the proposition that the breach of the prompt payment provisions of the *Virginia Public Procurement Act* is material. First, even if this were the holding in *Shen Valley*, the Plaintiff has at least arguably waived that breach for the above stated reasons. Second, the Court in *Shen Valley* held not that all breaches of the prompt payment provisions of the *Virginia Public Procurement Act* are material, but only that the breaches in that case were material: "Contractor's breach of Subcontract §4.2.2, which incorporated Prime Contract §37, and of Virginia Code §11-62.9's prompt payment provisions is material." In *Shen Valley*, the contractor withheld payments because of a dispute with the subcontractor and the subcontractor adamantly objected to the withholding: "Subcontractor responded that it would not add additional members to the masonry staff unless it was paid in a prompt manner." *Shen Valley*, 57 Va. Cir. at 198. In this case, however, the payments were not made late because of a dispute, and the Plaintiff never objected to the late payments.

The Plaintiff also argues that the Defendant materially breached the Subcontract at execution by not expressly including the seven day pay period into the Subcontract, as required by Virginia law and the Prime Contract. The Subcontract contained a fifteen day pay period provision and also included the seven-day pay period embodied in the Prime Contract by implication; according to the Plaintiff, the very first section of the subcontract incorporated "[a]ll

-9-

terms and conditions of the Prime Contract." However, the Plaintiff still argues that a breach occurred because the Subcontract does not *expressly* include a seven-day provision as required by Virginia law. This argument proffered by the Plaintiff must fail for the same reasons that those proffered above by the Plaintiff failed. The determination of whether failing to expressly include the seven-day pay period in the Subcontract is a material breach of the Subcontract is not an issue that should be resolved in favor of the Plaintiff by way of summary judgment in this case.

The gravamen of the Plaintiff's *Motion* is that the Defendant breached the Subcontract at a time before it could be alleged that the Plaintiff breached the Subcontract. Therefore, the Plaintiff is asking this Court to enter summary judgment which would require the Defendant to compensate the Plaintiff for the payments plus interest that it has been withholding from the Plaintiff. The Defendant has been withholding payments because the Defendant believes that the Plaintiff breached the contract, albeit at a time later than when the Plaintiff is now arguing that the Defendant breached the contract. The alleged breach by the Plaintiff is the subject of the Defendant's *Counterclaim* filed in this case on March 1, 2005. The Plaintiff is attempting to argue that because reasonable minds could not otherwise find that the Defendant breached the contract first, this Court should enter summary judgment which would effectively prevent the Plaintiff's later alleged breach from having significance, and would require the Defendant to pay the Plaintiff the money it has been withholding plus interest. The Defendant in this case, however, argues that the Plaintiff can only use the alleged first breach by the Defendant as a defense against an allegation by the Defendant that the Plaintiff is liable for a later breach of the contract.

-10-

Above I have held that I cannot resolve the issue of whether the Defendant was the first to materially breach the contract in favor of the Plaintiff by way of summary judgment. Therefore, herein I need not and will not rule on the issue of whether the defense of first breach of contract is available to the Plaintiff before the Defendant alleges that the Plaintiff breached the contract.

In its *Memorandum in Support*, the Plaintiff writes, "The timing of such material breaches on the part of Glade East precludes it from enforcing the Subcontract, and excuses Marshall from performing its obligations under the Subcontract, and in turn entitles Marshall to judgment as a matter of law." Based on the law pertinent to this case and a rational application of that law, I disagree with the Plaintiff.

### V. CONCLUSION

For the reasons stated above, the Plaintiff's *Motion for Summary Judgment* shall be denied.

The Clerk of the Court is hereby directed to send a certified copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 30th day of March, 2006.

                                                 s/Jackson L. Kiser
                                                 Senior United States District Judge